UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TIMMY JACKSON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 4:10CV1009MLM |
| | ) | |
| JEFF NORMAN, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION**

This matter is before the court on the Petition for Writ of Habeas Corpus filed by Petitioner Timmy Jackson ("Petitioner") pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 8. Petitioner filed a Reply to Respondent's Response and an Amended Reply. Docs. 10, 13. Also before the court is the Motion for Appointment of Counsel filed by Petitioner. Doc. 18. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Doc. 7.

**I.
APPOINTMENT OF COUNSEL**

In the pending Motion for Appointment of Counsel Petitioner states that he is unable to pay a "reasonable attorney fee"; that he has made diligent efforts to obtain legal counsel but because of [his] poverty] is unable to secure" counsel; and that he is aware of an attorney who would accept an appointment to represent Petitioner before this court.[1] Doc. 18.

---

[1] Petitioner has attached to his Motion for Appointment of Counsel letters denying Petitioner's request for representation from the Missouri State Public Defender System, the Innocence Project of Minnesota, the Innocence Project of the Thomas M. Cooley Law School, the New England Innocence Project, and the University of Baltimore Clinical Law Offices. Petitioner

Although there is no constitutional right to appointment of counsel in habeas corpus proceedings. Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994), the Eighth Circuit Court of Appeals has thoroughly discussed those circumstances in which the appointment of counsel is appropriate. Specifically, in Abdullah v. Norris, 18 F.3d 571 (8th Cir. 1994), the Eighth Circuit offered the following guidance:

> A magistrate judge or district judge may appoint counsel for a habeas petitioner if "the interests of justice so require." 18 U.S.C.A. § 3006A(a)(2), (a)(2)(B) (West Supp. 1993). If a district court conducts an evidentiary hearing on the petition, the interests of justice require that the court appoint counsel for the petitioner. See Rule 8(c), Rules Governing Section 2254 Cases in the United States District Courts (hereinafter "Habeas Rules"). If no evidentiary hearing is necessary, the appointment of counsel is discretionary.
>
> When exercising its discretion, a district court should first determine whether a pro se habeas petitioner has presented a nonfrivolous claim. Battle [v. Armontrout, 902 F.2d 701, 702 (8th Cir. 1990)]. If the petitioner has presented only claims that are frivolous or clearly without merit, the district court should dismiss the case on the merits without appointing counsel. See Habeas Rule 4. If the petitioner has presented a nonfrivolous claim, the district court should then determine whether, given the particular circumstances of the case, the appointment of counsel would benefit the petitioner and the court to such an extent that "the interests of justice so require" it. 18 U.S.C. § 3006A(a)(2); see also Battle, 902 F.2d at 702. To determine whether appointment of counsel is required for habeas petitioners with nonfrivolous claims, a district court should consider the legal complexity of the case, the factual complexity of the case, the petitioner's ability to investigate and present his claim, and any other relevant factors. See Battle, 902 F.2d at 702; Johnson v. Williams, 788 F.2d 1319, 1322-23 (8th Cir. 1986).

Id.

First, Petitioner in the matter under consideration has filed a Reply to Respondent's Response and an Amended Reply. Upon doing so, Petitioner has clearly addressed the issues before this court and demonstrated that he is able to present his claim in a clear and concise fashion. Second, the §2254 Petition filed by Petitioner contains claims that are not legally complex or factually complex.

---

has also attached a letter from a lawyer in private practice who states in her letter that she will represent Petitioner for a fee. Doc. 18-1.

As such, considering all of the above standards in conjunction with the claims raised by Petitioner in his petition, the court finds that the appointment of counsel would not benefit Petitioner and the court to such an extent that the interests of justice require the appointment of counsel.

## II.
## BACKGROUND

On March 18, 2003, Petitioner was charged, by Information, as follows: Count I, Murder in the First Degree, in that, on November 30, 2002, Petitioner, after deliberation, knowingly caused the death of Jimmy Grills, by shooting him; Count II, Armed Criminal Action , with regard to Count I; Count III, Robbery in the First Degree, in that on November 30, 2002, Petitioner forcibly stole a wallet owned by Jimmy Grills, and in the course thereof, Petitioner was armed with a deadly weapon; and Count IV, Armed Criminal Action, with regard to Count III. Resp. Ex. D at 9-11. On June 12, 2003, the State filed a Notice of Intent to Seek Death Penalty. Resp. Ex. D at 18-19. On October 21, 2003, the State and Petitioner filed a Withdrawal of Notice of Aggravating Circumstances and Waiver of Jury Trial. Resp. Ex. D at 39. Additionally, the State dismissed Counts II-IV. Resp. Ex. D at 7.

A bench trial was held on June 17, 2004. Resp. Ex. E. The Missouri appellate court described the testimony at Petitioner's trial was as follows:[2]

---

[2] In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)). See also Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002). Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing 28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2); Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)). See also Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988). The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn

3

In the late evening of November 29, 2002, Hudson stopped by [Petitioner]'s home. Hudson asked [Petitioner] to help him pick up some money from someone. As Hudson and [Petitioner] drove to the home of Jimmy Grills, Hudson handed [Petitioner] a .22 revolver. Hudson told [Petitioner] that, if anything happened, he should pull the gun out and get the money. [Petitioner] placed the gun in his pocket, and he also was armed with a hunting knife. When they arrived at Grills' home, Hudson asked to borrow some money. Grills said he had none. Hudson demanded all of Grills' money, and [Petitioner] pulled out the revolver. Grills moved toward [Petitioner] and was shot by him. As Hudson and Grills fought, [Petitioner] shot Grills again. The gun malfunctioned after the second shot, so [Petitioner] removed the knife from his pocket. [Petitioner] used the knife to stab Grills and strike him in the head and side. Hudson then took the knife from [Petitioner] and started choking and stabbing Grills. [Petitioner] found Grills' wallet, which had money in it, and placed it in his pocket. While Hudson continued to struggle with Grills, [Petitioner] wandered around the home looking for something else to steal. When he was unable to locate anything else of value, he returned to the living room. Hudson was still on top of Grills, choking and stabbing him. Hudson walked to the bathroom to wash his hands. Still alive, Grills got up and started heading for the door. [Petitioner] knocked Grills back down. Grills reached for the phone, but [Petitioner] ripped the cord from the wall. When Hudson came out of the bathroom, he began stabbing Grills again because he was still alive. [Petitioner] and Hudson then left.

In the early morning hours of November 30, 2002, Shirley Miller (Miller) arrived home to find Grills, who was her boyfriend, lying dead on the floor in a pool of blood. The cause of death was exsanguination due to multiple stab wounds to Grills' head, neck and chest. He also had been shot in the face and right forearm. Additional facts necessary to the disposition of the case are included below as we address [Petitioner]'s three points of error.

State v. Jackson, 248 S.W.3d 117, 120-21 (Mo. Ct. App. 2008).

The court found Petitioner guilty of murder in the first degree for killing Jimmy Grills and sentenced him to imprisonment for life, without the possibility of probation or parole. Resp. Ex. D

---

regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)). Mixed questions of law and fact, however, are not entitled to a presumption of correctness pursuant to § 2254(d). Cornell v. Nix, 976 F.2d 376, 382 (8th Cir. 1992).

As noted by the Missouri appellate court in the matter under consideration, Petitioner did not challenge the sufficiency of the evidence to sustain his conviction. Jackson, 248 S.W.3d at 119.

at 58-60. Petitioner filed a direct appeal. Resp. Ex. A. By decision, dated February 20, 2008, the Missouri appellate court affirmed the judgment of the trial court. Jackson, 248 S.W.3d at 126.

Petitioner filed a pro se post-conviction relief motion. Resp. Ex. I at 4-30. Counsel was appointed and filed an amended motion, which the motion court denied. Resp. Ex. I at 31-42. Petitioner then filed an appeal of the motion court's denial of his post-conviction relief motion. Resp. Ex. G. By decision dated, December 29, 2009, the Missouri appellate court affirmed the decision of the motion court. Resp. Ex. L.

On May 28, 2010, Petitioner filed his § 2254 Petition, in which he raises the following issues:

**(1)** Petitioner received ineffective assistance of trial counsel because counsel offered an excerpt from a state crime lab report into evidence, as opposed to the full report; and

**(2)** Petitioner received ineffective assistance of trial counsel because trial counsel failed to call Petitioner to testify on his own behalf.

Doc. 1.

### III.
### EXHAUSTION, PROCEDURAL DEFAULT AND TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. Id. at 1150 (citing Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails "'to follow applicable state procedural rules [for] raising the claims' (citation omitted) . . . , is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." Id. at 1151 (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." Abdullah v. Groose, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation

5

omitted). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" Id. at 411-12.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. Dretke v. Haley, 541 U.S. 386, 388-89 (2004). It has been held that "novel circumstances and arguments" may constitute cause to excuse procedural default. McKinnon v. Lockhart, 921 F.2d 830, 833-34 (8th Cir. 1990). In regard to the "prejudice" component of "cause and prejudice," "actual prejudice" is required to overcome the procedural bar. Zinzer v. Iowa, 60 F.3d 1296, 1299 (8th Cir. 1995).

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are no 'currently available, non-futile remedies,' through which the petitioner can present his claim." Id. (citation omitted). In Petitioner's case, he raised the issues which he raises in his § 2254 Petition before the Missouri appellate court.

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. Petitioner filed his § 2254 Petition within that time period. As such, the court finds that Petitioner's § 2254 Petition is timely.

## IV.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997). In conducting habeas review

6

pursuant to § 2254 a federal court is limited to deciding whether decisions of state courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). "'Federal law, as determined by the Supreme Court,' refers to 'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably. Id. at 283 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006); Owsley v. Bowersox, 234 F.3d 1055, 1057 (8th Cir. 2000)). Thus, where there is no federal law on a point raised by a habeas petitioner, a federal court cannot conclude either that a state court decision is "'contrary to, or involved an unreasonable application of, clearly established Federal law' under 28 U.S.C. §2254(d)(1)." Id. at 784. "When federal circuits disagree as to a point of law, the law cannot be considered 'clearly established' under 28 U.S.C. § 2254(d)(1). Id. at 783 (citing Tunstall v. Hopkins, 306 F.3d 601, 611 (8th Cir. 2002)). See also Carter v. Kemna, 255 F.3d 589, 592 (8th Cir. 2001) (holding that in the absence of controlling Supreme Court precedent, a federal court cannot reverse a state court decision even though it believes the state court's decision is "possibly incorrect").

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2)

7

> "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state-court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state court decision to satisfy the "unreasonable application" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case." Williams, 529

U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11). The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1)."), cert. denied, 543 U.S. 1027 (2004).

The United States Supreme Court has defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 644 (2004).

## V.
## STANDARD FOR EFFECTIVE ASSISTANCE OF COUNSEL

Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense." Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). The "performance" prong of Strickland requires a showing that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 697. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." Id. at 669. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Id. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...
>
> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." (citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

The Supreme Court has emphasized that the standard to be applied by a federal court when reviewing a Strickland claim of a state prisoner pursuant to § 2254 is "doubly deferential judicial review." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009). The Court further explained that "because the Strickland standard is a general standard, a state court has even more latitude to

11

reasonably determine that a defendant has not satisfied that standard." Id. (citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## VI.
## DISCUSSION

**Ground 1 - Petitioner received ineffective assistance of trial counsel because counsel offered an excerpt from a state crime lab report into evidence, as opposed to the full report:**

In support of Ground 1, Petitioner argues that the full crime lab report would have shown that no blood was found on Petitioner's clothing and that this would have supported his defense that Hudson was the murderer. Petitioner further contends that "any reasonably competent attorney in the same or similar circumstances would have entered the entire state crime lab report into evidence." Doc. 10 at 2. Petitioner also argues that "he did not coolly reflect on murdering the victim"; that Petitioner's "role was much less and did not rise to first degree murder"; that this was Petitioner's trial strategy; and that, under such circumstances, a "reasonably competent trial counsel would have introduced into evidence the complete lab report." Doc. 10 at 2-3. Additionally, Petitioner argues, in support of both Grounds 1 and 2, that the Missouri appellate court disregarded the transcript of the trial and the legal file of Petitioner's co-defendant. Petitioner also argues that the legal theory at Petitioner's trial was inconsistent with the State's theory at the trial of his co-defendant and that the

transcript of his co-defendant's trial should have been entered into evidence at his trial.[3] Doc. 13 at 2-3.

Upon addressing the issue of Petitioner's Ground 1, the Missouri appellate court held:

> In his first point, [Petitioner] alleges that his counsel's decision to submit only three pages of a Missouri State Highway Patrol report consisting of the results of the DNA testing performed on items of clothing and swabs from a car, as opposed to the full report, was a failure to exercise the customary skill and diligence of a reasonably competent attorney in similar circumstances. The three-page result portion of the report stated that no blood was detected on a pair of work boots, tennis shoes, a coat, a belt, or on swabs from the glove box, driver's side dash, and switch area of the car. [Petitioner] argues that the full report would have provided context to the three-page portion, including the origin of the items tested, which would have demonstrated the relevance and importance of the results. [Petitioner] contends that the three-page report does not establish the nature and source of the items tested, which is correct, but we note that neither does the full report. Nothing in the full report attributes the items tested to [Petitioner], so [Petitioner]'s argument that the full report would have established the lack of blood on his clothes, and therefore implied he played a lesser role in the murder, is without merit. The motion court reviewed the complete report and found that nothing in the remainder of it would have aided [Petitioner]'s defense, and that trial counsel's decision to submit only the relevant result portion of the report was therefore [] not unreasonable or ineffective. Upon review of the record, we cannot say that finding was in error. Point I is denied.

Resp. Ex. L at 3-4.

---

[3] The Missouri appellate court noted that, on appeal, Petitioner tendered a transcript and the legal file from Hudson's trial; that Petitioner asked that these documents be included as part of the record on appeal; that these materials were not considered by the trial court and were not made a part of the record in Petitioner's case; and that, therefore, the appellate court was required to disregard the materials from Hudson's trial. Resp. Ex. F at 10-11 (citing State v. Pendergrass, 869 S.W.2d 816, 819 n.1 (Mo. Ct. App. 1994)). Issues concerning the interpretation and application of state law are not cognizable in federal habeas review. See Poe v. Caspari, 39 F.3d 204, 207 (8th Cir. 1994) (holding that it is not the province of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts). Thus, to the extent Petitioner alleges, as a basis for habeas relief before this court, that the Missouri appellate court erred in not considering the transcript and materials from Hudson's trial, such an issue is not cognizable pursuant to this court's habeas review. To the extent Petitioner intends to raise as a separate ground for habeas relief alleging that the trial transcript of his co-defendant's trial should have been entered into evidence at his trial, Petitioner did not raise this issue on appeal. As such, that issue is procedurally defaulted. See Sweet v. Delo, 125 F.3d 1144, 1149 (8th Cir. 1997).

The court has set forth above the standard applicable to determining claims of ineffective assistance of trial counsel. Additionally, "[i]neffective assistance should not be found under Strickland when counsel fails to perform those acts which clearly appear to be futile or fruitless at the time the decision must be made. Garrett v. United States, 78 F.3d 1296, 1303 n.11 (8th Cir. 1996).

At the post-conviction hearing, counsel explained that he admitted into evidence that portion of the lab results which showed that blood was not detected on the clothing items; that the absence of blood would have been inconsistent with Petitioner's stabbing the victim; and that counsel introduced a portion of the lab report in order to show that absence of blood on clothing that was submitted to the crime labs. Resp. Ex. J at 27.

The Missouri appellate court considered that Petitioner asserted that the whole lab report would have shown that he played a lesser role in the crime because his blood was not on the items tested. The appellate court reasoned that the full report did not establish the source of the items tested and, as such, would not have established that Petitioner played a lesser role. Indeed, counsel introduced into evidence portions of the lab report which showed that blood was not detected on various items. Applying the standard of deference applicable to this court's review of the decision of the Missouri appellate court regarding the allegation of Petitioner's Ground 1, this court finds that the decision of the Missouri appellate court is not contrary to federal law and that it is a reasonable application of federal law. See Knowles, 129 S.Ct. at 1420; Strickland, 466 U.S. at 687; Garrett, 78 F.3d at 1303 n.11. The court also finds that the Missouri appellate court's decision, in regard to the issue of Petitioner's Ground 1, is a reasonable determination of the facts in light of the evidence presented at his trial. See § 2254(d)(2). The court finds, therefore, that Petitioner's Ground 1 is without merit and that habeas relief on its basis should be denied.

**Ground 2 - Petitioner received ineffective assistance of trial counsel because trial counsel failed to call Petitioner to testify on his own behalf:**

In support of Ground 2, Petitioner argues that although trial counsel testified at the evidentiary hearing that "he was sure that he had spoken with [Petitioner] about testifying and that [Petitioner] did not want to testify," counsel made the "sole decision not to allow Petitioner to testify." Doc. 10 at 5. Petitioner contends that counsel's testimony in this regard contradicts his testimony that Petitioner's testifying would not have been in his best interest. Doc. 10 at 5. Petitioner states that he told trial counsel that he wanted to testify. Doc. 10 at 6.

Upon addressing the issue of Petitioner's Ground 2, the Missouri appellate court held:

> In his second point, [Petitioner] alleges that he was denied effective assistance of counsel in that his trial counsel failed to call [Petitioner] to testify on his own behalf. At the evidentiary hearing, [Petitioner]'s trial counsel testified that he had discussed [Petitioner]'s right to testify with [Petitioner], and that [Petitioner] had not expressed a desire to testify on his own behalf. [Petitioner] testified to the contrary. The motion court found that [Petitioner] knew he could have testified but chose not to. That finding was implicitly based on credibility, as the court could not believe the conflicting testimony of both trial counsel and [Petitioner] and still reach that result. We will not question the motion court's credibility determination. [Zink v. State, 278 S.W.3d 170, 178 (Mo. banc 2009)].
>
> The motion court found that [Petitioner] failed to demonstrate how this testimony would have aided his defense, and that [Petitioner] failed to prove that his attorney failed to practice sound trial strategy. [Petitioner] testified at the evidentiary hearing that had he testified at his trial, he would have testified "exactly the same" as he did in the trial of his co-defendant. A transcript of his co-defendant's trial was offered and accepted into evidence. Given that [Petitioner] stated that his testimony would have been consistent with a trial transcript that was admitted into evidence, we cannot say that the motion court's finding was in error. Point II is denied.
>
> [Petitioner]'s arguments simply fail to meet the stringent standard required to prove that his counsel did not exercise the level of skill and diligence that a reasonably competent attorney would exercise in similar circumstances, and that his counsel's failure to do so resulted in prejudice to him. The judgment is affirmed.

Resp. Ex. L at 4-5.

Petitioner's counsel testified at the post-conviction evidentiary hearing that he was sure that he spoke with Petitioner about his testifying and that Petitioner said that he did not want to testify. Resp. Ex. J at 29, 44. Counsel further testified that he did not believe that Petitioner's testifying

15

would have been in his best interest. Counsel also noted that Petitioner's videotaped account of the offense was presented into evidence.[4] Petitioner testified at the post-conviction evidentiary hearing that he told his attorney that he wanted to testify. Resp. Ex. I at 51. The decision of the Missouri appellate court relied on the credibility findings of the motion court regarding whether Petitioner knowingly made the decision not to testify. The motion court credited counsel's version of what transpired and found that Petitioner understood his right to testify and chose not to exercise this right. Resp. Ex. I at 51. Under federal law, findings of credibility are left to the discretion of the state courts. Winfield v. Roper, 460 F.3d 1026, 1035 (8th Cir. 2006). Federal habeas review "gives federal courts no license to redetermine [the] credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Perry v. Kemna, 356 F.3d 880, 885 (8th Cir. 2004) (citing Marshall v. Lonberger, 459 U.S. 422, 434 (1983)).

The decision of the Missouri appellate court regarding the issue of Petitioner's Ground 2 also relied on Petitioner's failing to show that counsel failed to practice sound trial strategy. In this regard, the Missouri appellate court found that, although Petitioner said that, had he testified, he would have said the exact same thing that he said at his co-defendant's trial. As required by the second prong of the Strickland test, the Missouri appellate court concluded, therefore, that Petitioner was not prejudiced by counsel's alleged ineffective performance. Further, as required by the first prong of the Strickland test, the Missouri appellate court concluded that Petitioner did not establish that counsel failed to meet the level of skill and diligence to be expected of a competent attorney. The court finds that the decision of the Missouri appellate court in regard to the issue of Petitioner's Ground 2 is not contrary to federal law and that it is a reasonable application of federal law. The

---

[4] As stated by the Missouri appellate court, "[t]he gist of [Petitioner's videotaped statement to police] was that Hudson had shot and stabbed Grills while [Petitioner] remained outside in the car." Resp. Ex. F at 5.

court also finds that the Missouri appellate court's decision in regard to the issue of Petitioner's Ground 2 is a reasonable determination of the facts in light of the evidence presented at his trial. See § 2254(d)(2). The court finds, therefore, that Petitioner's Ground 2 is without merit and that habeas relief on its basis should be denied.

## VII.
## CONCLUSION

For the reasons stated above, the court finds that Petitioner's Motion for Appointment of Counsel should be denied. The court also finds that the issues raised in Petitioner's § 2254 Petition are without merit and that, therefore, Petitioner's § 2254 Petition is denied in its entirety.

The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional magnitude. Because Petitioner has made no showing of a denial of a constitutional right, Petitioner will not be granted a certificate of appealability in this matter. See Tiedeman v Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that the Motion for Appointment of Counsel filed by Petitioner is **DENIED**; Doc. 18

**IT IS FURTHER ORDERED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**, in its entirety; Doc. 1

**IT IS FURTHER ORDERED** that a separate judgement will be entered this same date;

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Petitioner for a certificate of Appealability will be **DENIED**.

/s/Mary Ann L. Medler

MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of August, 2011.